UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ESTATE OF
RICHARD DONALD PFISTER, JR.,

    Plaintiff,

v.

COUNTY OF MACOMB, MARK HACKEL,
CORRECTIONAL MEDICAL SERVICES,
BEVERLY PUCHOVEN, JAMES HARRIS,
CHRISTOPHER COSTANZA, DAVID
WHITE, MARIA BALSAMA, SCOTT JONES,
SGT. PATRICK JOHNSON, NURSE
ANGELA VETTRAINO, NURSE KATHY
HAWKINS,

    Defendants.
_____/

Case No. 09-10981
Honorable Patrick J. Duggan

**<u>OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS MACOMB COUNTY, SHERIFF MARK HACKEL, BEVERLY PUCHOVEN, JAMES HARRIS, CHRISTOPHER COSTANZA, DAVID WHITE, MARIA BALSAMA, SCOTT JONES, AND SGT. PATRICK JOHNSON</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 30, 2009.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

This is a wrongful death action arising out of the death of Richard Donald Pfister, Jr. ("Mr. Pfister") during his incarceration at the Macomb County Jail. Mr. Pfister's estate has brought a claim pursuant to 42 U.S.C. § 1983 alleging that the individual

Defendants were deliberately indifferent to Mr. Pfister's medical needs in violation of the Eighth Amendment (Count I).[1] In Count II of the Complaint, Plaintiff alleges that Macomb County is liable under § 1983 because it maintained a policy or custom that caused the Eighth Amendment violation. Presently before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) brought on behalf of Defendants Macomb County, Sheriff Mark Hackel, Beverly Puchoven, James Harris, Christopher Costanza, David White, Maria Balsama, Scott Jones, and Sergeant Patrick Johnson (collectively "County Defendants"). The motion has been fully briefed and the Court held a motion hearing on October 27, 2009.

I.      **Plaintiff's Claim that the County Defendants' Motion is Premature**

In response to the County Defendants' motion, Plaintiff invokes Federal Rule of Civil Procedure 56(f) and argues that the motion is premature because discovery does not close according to the Court's scheduling order in this case until October 31, 2009, and depositions of the remaining Defendants were scheduled for September 25, 2009 (four days after Plaintiff filed its response). Rule 56(f) states:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;

---

[1] In the Complaint, Plaintiff alleges a violation of the Fourth and Fourteenth Amendments; however in its response brief, Plaintiff acknowledges that its claim in fact arises under the Eighth Amendment because Mr. Pfister was a prisoner and not a pretrial detainee. (Pl.'s Resp. at 4 n.1.)

>   (2) order a continuance to enable affidavits to be obtained, depositions to be taken or other discovery to be undertaken; or
>
>   (3) issue any other just order.

Fed. R. Civ. P. 56(f). To obtain relief under this provision, the party must describe with "some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (quotation marks and citations omitted). "'Bare allegations or vague assertions of the need for discovery are not enough' under Rule 56(f)." *Id.* (quoting *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004)).

Plaintiff has not provided an affidavit to support its request for relief pursuant to Rule 56(f). Even assuming that the assertions in Plaintiff's unsworn response brief would satisfy the rule's requirement that the pleading "shows by affidavit" that Plaintiff needs further discovery to respond to the County Defendants' motion, the Court finds that Plaintiff fails to identify with any specificity how the discovery still to be conducted is essential to its opposition. Plaintiff refers specifically to the depositions to be taken of the medical care providers who rendered care to Plaintiff during his incarceration; however, Plaintiff does not indicate or even speculate as to what those individuals might say that would be relevant to the issues raised in the County Defendants' summary judgment motion.

In any event, by the time this motion was heard, Plaintiff had the opportunity to depose the individuals who provided medical care to Mr. Pfister during his incarceration.

3

At the hearing, Plaintiff presented no additional evidence uncovered in the depositions to support the denial of the County Defendants' summary judgment motion.[2]

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348,

---

[2]At the motion hearing, Plaintiff's counsel sought permission to file an affidavit on behalf of an expert in support of his opposition to the County Defendant's motion. The Court denied counsel's request because counsel does not have an expert at this time and Plaintiff did not identify an expert on the witness lists that were filed on April 22 and 30, 2009. (Docs. 9, 11.) Pursuant to this Court's May 19, 2009 Scheduling Order, all witnesses to be called at trial were to be listed by August 31, 2009. (Doc. 16.)

1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255.

### III.    Factual and Procedural Background

Mr. Pfister entered the Macomb County Jail on September 8, 2005, after pleading guilty to larceny in a building and being a habitual offender in the Circuit Court for Macomb County, Michigan. At sentencing, it was noted that Mr. Pfister suffered from a history of depression and bipolar disorder and that he had undergone back surgery in 2004.

Correctional Medical Services ("CMS") screened Mr. Pfister on September 9, 2005. Mr. Pfister reported that he had undergone back surgery in September 2004. He did not report any other physical problems or conditions, such as a heart condition. (Defs.' Mot. Ex. B.) He denied using drugs or alcohol. (*Id.*) Mr. Pfister did report psychiatric hospitalization three months earlier for depression and a history of outpatient mental health treatment. (*Id.*) Mr. Pfister was approved for placement in the general population with a routine mental health referral to be completed within 48 hours. (*Id.*)

Mr. Pfister's mental health screening was completed on September 10, 2005. (Pl.'s Resp. Ex. A.) CMS recommended at this time that Mr. Pfister be placed in the Mental Health Unit, in a bottom bed only. (*Id.*) The Mental Health Unit was full,

however, and therefore Mr. Pfister was placed in the C-Block in Booking, an area commonly used for mental health inmates when a space in the Mental Health Unit is unavailable.

On September 10, 2005, at approximately 10:00 p.m., a nurse was called to see Mr. Pfister who was vomiting and complaining of an upset stomach. (Defs.' Mot. Ex. E.) The nurse took Mr. Pfister's vitals and noted no signs of drug or alcohol withdrawal. (*Id.*) Mr. Pfister denied doing street drugs and indicated that he had not consumed alcohol since Vietnam. (*Id.*) Mr. Pfister informed the nurse that he did not want anything except "to be left alone." (*Id.*)

On September 11, 2005, at approximately 5:30 p.m., Defendant Corrections Deputy David White ("Deputy White") observed Mr. Pfister lying on the floor in the day room. (Pl.'s Resp. Ex. C.) Deputy White asked Mr. Pfister if he was okay and Mr. Pfister replied that his back was hurting. (Pl.'s Resp. Ex. D at 10.) Deputy White asked Mr. Pfister if he needed help, as it appeared that Mr. Pfister was struggling to get up from the floor. (*Id.*) Mr. Pfister declined, got up, and walked to his cell. (*Id.* at 10-11.) According to Deputy White, aside from saying that his back hurt, Mr. Pfister did not appear to be in any distress. (*Id.* at 11.)

About an hour later, at 6:40 p.m., Defendant Corrections Deputy Beverly Puchovan ("Deputy Puchovan") was alerted to a problem in the C-Unit by the inmates in the unit. (Defs.' Mot. Ex. G at 9-10.) Deputy Puchovan and Deputy White ran into the unit where they observed Mr. Pfister laying on the ground of his cell with his head at the

door and what appeared to be blood underneath his head. (*Id*. at 11-12; Ex. D at 12.) They called for a nurse and Defendant Nurse Kathy Hawkins– who was in the unit screening inmates– responded immediately. (Defs.' Mot. Ex. D at 12-13.) Nurse Hawkins entered the cell and began performing CPR on Mr. Pfister. (Defs.' Mot. Ex. G at 11.) More nurses arrived and additional aid, including a shock with an automatic external defibrillator ("AED") was administered. At 6:50 p.m., Sergeant Patrick Johnson called for an ambulance and the Mt. Clemens Fire and Rescue. (Defs.' Ex. D at 12-13, Ex. H.) An ambulance arrived at the jail at 6:53 p.m. (*Id*. Ex. H.)

At 6:56 p.m., according to the EMS report, vital signs for Mr. Pfister were absent. (*Id*.) At 7:15 p.m., Mr. Pfister was transported to the hospital. (*Id*.) When he arrived at 7:20 p.m., vital signs still were absent. (*Id*.) A subsequent autopsy by the Macomb County Chief Medical Examiner indicated that Mr. Pfister died On September 11, 2005, of arteriosclerotic and hypertensive heart disease. (Defs.' Mot. Ex. I.) The autopsy also revealed a laceration on Mr. Pfister's head that did not contribute to his death but was consistent with a terminal collapse. (*Id*.)

On March 2, 2009, Plaintiff filed its Complaint against Defendants in the Circuit Court for Macomb County, Michigan. Defendants removed Plaintiff's action to federal court pursuant to 28 U.S.C. § 1331 on March 17, 2009. The County Defendants filed the pending motion for summary judgment on September 1, 2009.

**IV.  Applicable Law and Analysis**

As indicated earlier, Plaintiff asserts two claims in its Complaint: (I) deliberate

indifference to Mr. Pfister's medical needs by the individual Defendants in violation of the Eighth and Fourteen Amendments pursuant to 42 U.S.C. § 1983; and (II) municipal liability under § 1983 based on a custom or policy that led to the violation of Mr. Pfister's constitutional rights.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. In the context of prisoners' medical needs, courts find a violation of the Eighth Amendment where prison officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). An Eighth Amendment deliberate indifference claim consists of objective and subjective components.

The objective component requires a showing that the alleged deprivation was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). Stated differently, the prisoner's medical needs must be or have been "sufficiently serious." *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The subjective component requires the plaintiff to show that the defendants had "a sufficiently culpable state of mind in denying [the inmate] medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977). "[A] plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clark-Murphy v. Foreback*, 439 F.3d 280,

286 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979).

The County Defendants argue in their motion for summary judgment that Plaintiff cannot satisfy the subjective component of its Eighth Amendment claim. This Court agrees. Plaintiff presents no evidence to suggest that any of the County Defendants were aware of and ignored Mr. Pfister's heart condition or risk of failure. At intake on September 9, 2005– three days before his death– it was conveyed that Mr. Pfister had undergone back surgery in September 2004. No other medical problems or conditions were reported.

Mr. Pfister was vomiting and complaining of an upset stomach at 10:00 p.m. on September 10. Plaintiff states in its response brief that Mr. Pfister "was very ill" on that date (Pl.'s Resp. at 1) and was "in significant distress for over a day before his death (*id*. at 2); however, there is no evidence in the record supporting these statements. (*See id*. Ex. B.) In particular, there is no evidence that Mr. Pfister continued to experience an upset stomach and vomiting or displayed any other symptoms requiring medical attention after he was seen by a nurse. Moreover, Plaintiff presents no evidence to suggest that the conditions Mr. Pfister exhibited should have alerted the County Defendants to his risk of heart failure.

The next day, Mr. Pfister was found lying on the floor of the day room and he complained of back pain. But nothing in the record supports Plaintiff's statement in its brief that Mr. Pfister "appeared in distress." (Pl.'s Resp. at 1.) Mr. Pfister exhibited some difficulty standing up from the floor– causing Deputy White to ask if he needed help– but

9

Mr. Pfister said he "was fine," declined Deputy White's help, stood up, and walked back to his cell without assistance. (Pl.'s Resp. Ex. D at 10-11.) Deputy White testified that, except for his complaints of back pain, Mr. Pfister did not show any signs of distress. Particularly in light of Mr. Pfister's history of back surgery, there is nothing about this incident that should have alerted the County Defendants to Mr. Pfister's risk of heart failure an hour later or to any risk of physical harm to Mr. Pfister.

The absence of any warning signs of Mr. Pfister's impending heart attack or that he suffered heart problems render this case distinguishable from one of the cases Plaintiff cites: *Estate of Carter v. Hollins*, 408 F.3d 305 (6th Cir. 2005). In that case, shortly after she was booked, the prisoner informed her jailers that she was having chest pains and needed to go to the hospital. *Id.* at 307. She also informed them that she had not taken her "heart" medicine for three days. *Id.* The prisoner continued to complain of chest pain, indicated that she needed to go to the hospital, and sought help. *Id.* In the remaining cases cited by Plaintiff, the prisoners repeatedly suffered and complained of pain and/or prison officials were made aware of but ignored medical treatment needed by the prisoners. *See, e.g., McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999) (indicating that the prisoner had complained of severe stomach pains for several months); *Young v. City of Augusta*, 59 F.3d 1160 (11th Cir. 1995) (describing the prisoner's repeated episodes of psychotic behavior while incarcerated); *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994) (describing the prisoner's repeated complaints of hip pain following hip replacement surgery and the defendants' awareness that the pins in the prisoner's hip had

10

broken); *Durmer v. O'Carroll*, 991 F.2d 34 (3d Cir. 1993) (ignoring physicians' recommendations that the prisoner undergo physical therapy, his repeated requests for physical therapy, and deteriorating physical condition without physical therapy).

Because the record is devoid of evidence alerting the County Defendants to Mr. Pfister's heart condition or impending heart attack, there is no genuine issue of material fact with respect to the second prong of Plaintiff's deliberate indifference claim. The County Defendants could not be deliberately indifferent to a risk of harm to Mr. Pfister of which they were unaware. Summary judgment therefore is appropriate with respect to Count I of Plaintiff's Complaint against the County Defendants.

Having found that the individual County Defendants were not deliberately indifferent to Mr. Pfister's medical needs, the Court finds it unnecessary to address Macomb County's liability under § 1983. Summary judgment is warranted with respect to Count II of Plaintiff's Complaint, as well.

Accordingly,

**IT IS ORDERED**, that the motion for summary judgment brought on behalf of Defendants Macomb County, Sheriff Mark Hackel, Beverly Puchoven, James Harris, Christopher Costanza, David White, Maria Balsama, Scott Jones, and Sergeant Patrick Johnson is **GRANTED**.

                 s/PATRICK J. DUGGAN
                 UNITED STATES DISTRICT JUDGE

Copies to:
Daniel G. Romano, Esq.

Brian Richtarcik, Esq.
Jami E. Leach, Esq.