UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ESTATE OF
RICHARD DONALD PFISTER, JR.,

        Plaintiff,

v.                                            Case No. 09-10981
                                            Honorable Patrick J. Duggan

COUNTY OF MACOMB, MARK HACKEL,
CORRECTIONAL MEDICAL SERVICES, INC.,
BEVERLY PUCHOVEN, JAMES HARRIS,
CHRISTOPHER COSTANZA, DAVID
WHITE, MARIA BALSAMA, SCOTT JONES,
SGT. PATRICK JOHNSON, NURSE
ANGELA VETTRAINO, and NURSE KATHY
HAWKINS,

        Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS CORRECTIONAL MEDICAL SERVICES, INC., ANGELA VETTRAINO, R.N., AND KATHY HAWKINS, L.P.N.

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on  January 19, 2010.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

This is a wrongful death action arising out of the death of Richard Donald Pfister,

Jr. ("Mr. Pfister") during his incarceration at the Macomb County Jail.  Mr. Pfister's

estate ("Plaintiff") has brought a claim pursuant to 42 U.S.C. § 1983 alleging that the

individual Defendants were deliberately indifferent to Mr. Pfister's medical needs in

violation of the Eighth Amendment (Count I).[1]  In a second claim, Plaintiff alleges that Correctional Medical Services, Inc. ("CMS") and Macomb County are liable under § 1983 because they maintained a policy or custom that caused the Eighth Amendment violation (Count II).

On October 30, 2009, this Court entered an opinion and order granting summary judgment to Macomb County and its employees named as defendants: Sheriff Mark Hackel, Beverly Puchoven, James Harris, Christopher Costanza, David White, Maria Balsama, Scott Jones, and Patrick Johnson (collectively "County Defendants").  Presently before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) brought on behalf of CMS and its employees named as defendants: Angela Vettraino, R.N. ("Nurse Vettraino") and Kathy Hawkins, L.P.N. ("Nurse Hawkins") (collectively "CMS Defendants").  Plaintiff filed a response to the motion on December 8, 2009, and the Court held a motion hearing on January 14, 2010.

## I.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  The central

---

[1] Within the count of its Complaint alleging a violation of § 1983, Plaintiff asserts in a single paragraph that Defendants' conduct amounted to gross negligence in violation of Michigan Compiled Law § 691.1407.  To the extent Plaintiff is asserting a separate gross negligence claim, the Court rejects such a claim for the reasons set forth herein with respect to its deliberate indifference claim against the individual defendants.

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255.

## II.    Factual Background

Mr. Pfister entered the Macomb County Jail on September 8, 2005, after pleading guilty to larceny in a building and being a habitual offender in the Circuit Court for Macomb County, Michigan. At the time, Mr. Pfister was 51-years old. At sentencing, it was noted that Mr. Pfister suffered from a history of depression and bipolar disorder and

3

that he had undergone back surgery in 2004.

CMS, pursuant to a contract with Macomb County, provides health care services to prisoners at the Macomb County Jail. As part of this responsibility, Nurse Vettraino performed an initial health screening of Mr. Pfister at 6:05 p.m. on September 9, 2005. Mr. Pfister reported that he had undergone back surgery in September 2004. He did not report any other physical problems or conditions, such as a heart condition. His vital signs were normal. He denied using drugs or alcohol. Mr. Pfister did report psychiatric hospitalization three months earlier for depression and a history of outpatient mental health treatment. Based on her evaluation, Nurse Vettraino approved Mr. Pfister for placement in the general population with a routine mental health referral to be completed within 48 hours.

Psychologist Andre Pauritch completed Mr. Pfister's mental health screening on September 10, 2005. Mr. Pfister reported that he had been hospitalized for depression at a Veterans Administration hospital for four to five days in July and August, and that he thereafter treated with the hospital on an outpatient basis. He admitted that he was a recovering drug and alcohol addict, but claimed that he last used drugs and alcohol years previously. Dr. Pauritch diagnosed Mr. Pfister with depression and ETOH disorder in remission. He recommended that Mr. Pfister be placed in the Mental Health Unit with a bottom bed only due to his back condition, a follow-up in twelve weeks, and enrollment in the chronic care clinic for one week. The Mental Health Unit was full, however, and therefore Mr. Pfister was placed in the C-Block in Booking (an area commonly used for

4

mental health inmates when a space in the Mental Health Unit is unavailable).

At 10:00 p.m. on September 10, 2005, Nurse Pam Denise (who is not a defendant in this action) was called to see Mr. Pfister who was vomiting and complaining of an upset stomach. Mr. Pfister was in his cell on the bottom bunk, wrapped in a blanket. Nurse Denise took Mr. Pfister's vitals, which were normal, and noted that his skin was "warm and dry." She noted no signs of drug or alcohol withdrawal. Mr. Pfister denied drug use and indicated that he had not consumed alcohol since Vietnam. He further informed Nurse Denise that he did not want anything except "to be left alone." Nurse Denise instructed Mr. Pfister to notify the officers on duty if he continued to feel sick or worse and she documented the encounter. She planned to continue to monitor Mr. Pfister and to report his condition to the next shift.

On September 11, 2005, at 5:30 p.m., the jail's commanding officer, Deputy David White ("Deputy White"), observed Mr. Pfister lying on the floor in the Day Room. Deputy White asked Mr. Pfister if he was okay and Mr. Pfister replied that his back was sore. Deputy White asked Mr. Pfister if he needed help, as it appeared that Mr. Pfister was struggling to get up from the floor. Mr. Pfister declined, got up, and walked to his cell. Deputy White asked Mr. Pfister if he needed any medical attention. Mr. Pfister declined and stated that he was fine.

About an hour later, at 6:40 p.m., several officers were alerted to a problem in the C-Unit by the inmates in the unit. Upon their arrival, they observed Mr. Pfister lying on the ground of his cell with his head at the door and what appeared to be blood underneath

his head.  They called for a nurse and Nurse Hawkins– who was in the unit screening inmates– responded immediately. Nurse Hawkins entered the cell and observed that Mr. Pfister's face was cold, his skin "mottled," and he had no pulse or respiration.  She began performing CPR on Mr. Pfister and requested for additional medical staff to respond. Nurse Vettraino and Registered Nurse Monica Avito responded by 6:43 p.m. with an ambu-bag, oxygen tank, and an automatic external defibrillator ("AED").  The AED machine was used on Mr. Pfister and Nurse Hawkins continued CPR.  Only a weak carotid pulse was obtained.

At 6:50 p.m., Sergeant Patrick Johnson called for an ambulance and the Mt. Clemens Fire and Rescue.  An ambulance arrived at the jail at 6:53 p.m.  Ambulance staff and then a life support unit from the fire department took over the resuscitation attempts. At 6:56 p.m., according to the EMS report, vital signs for Mr. Pfister were absent.  At 7:15 p.m., Mr. Pfister was transported by ambulance to a hospital.  He arrived at 7:20 p.m., where he was pronounced dead.

A subsequent autopsy by the Macomb County Chief Medical Examiner indicated that Mr. Pfister died of arteriosclerotic and hypertensive heart disease.  The autopsy also revealed a laceration on Mr. Pfister's head that did not contribute to his death but was consistent with a terminal collapse.

III.    **Applicable Law and Analysis**

As stated earlier, Plaintiff asserts claims alleging a violation of Mr. Pfister's rights under the Eighth Amendment to the United States Constitution.  The Eighth Amendment

6

prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. In the context of prisoners' medical needs, courts find a violation of the Eighth Amendment where prison officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). An Eighth Amendment deliberate indifference claim consists of objective and subjective components.

The objective component requires a showing that the alleged deprivation was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). Stated differently, the prisoner's medical needs must be or have been "sufficiently serious." *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The subjective component requires the plaintiff to show that the defendants had "a sufficiently culpable state of mind in denying [the inmate] medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977). "[A] plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979).

Plaintiff cannot satisfy the subjective component of its Eighth Amendment claim against Nurse Hawkins or Nurse Vettraino. As with the individual County Defendants, Plaintiff fails to present evidence suggesting that Nurse Vettraino and Nurse Hawkins

7

were aware of and ignored Mr. Pfister's heart condition, risk of heart failure, or any other serious risk of harm to him. Plaintiff continues to maintain (as it did in response to the County Defendants' motion for summary judgment) that "Mr. Pfister was in significant distress for over a day before his death" and that he was "seriously ill" (*see* Doc. 36 at 6, 9); however, there is no evidence in the record supporting these statements.

At intake on September 9, 2005– three days before his death– it was conveyed that Mr. Pfister had undergone back surgery in September 2004. No other medical problems or conditions were reported. Mr. Pfister was vomiting and complained of an upset stomach the evening of September 10; however, his vital signs were normal and there is no evidence that Mr. Pfister continued to experience these ailments or displayed or complained of any other symptoms requiring medical attention after he was seen by Nurse Denise. While he was found lying on the Day Room floor the following afternoon (at 5:30 p.m. on September 11), he only complained that his back was sore, was able to return to his cell without assistance, stated that he was fine, and declined Deputy White's offer to be seen by a nurse.

Particularly in light of Mr. Pfister's history of back problems, there is nothing about this latter incident that should have alerted Nurse Vettraino or Nurse Hawkins to Mr. Pfister's risk of heart failure an hour later. Moreover, there is no evidence that either nurse was aware of this incident or Mr. Pfister's vomiting and upset stomach the previous day. As set forth earlier, to establish a deliberate indifference claim, a plaintiff must show that the defendant was *aware of facts* from which an inference could be drawn that a

8

substantial risk of serious harm to the prisoner existed and that he also drew that inference. *Clark-Murphy, supra*. Notably, there is no evidence suggesting that Nurse Vettraino was responsible for Mr. Pfister's care or had any contact with him between September 9 (when she completed his intake screening and assessment) and September 11 (when she was called to provide emergency medical treatment after he suffered his heart attack). The evidence indicates that Nurse Hawkins' first contact with Mr. Pfister occurred after Mr. Pfister suffered his heart attack, as the first medical responder to his cell.

Plaintiff continues to rely on the same cases to support its claim that it cited in response to the County Defendants' motion for summary judgment. As the Court indicated in its October 30, 2009 opinion and order granting the motion, the absence of any warning signs of Mr. Pfister's impending heart attack or that he suffered heart problems render this case distinguishable from *Estate of Carter v. Hollins*, 408 F.3d 305 (6th Cir. 2005). In that case, shortly after she was booked, the prisoner informed her jailers that she was having chest pains and needed to go to the hospital. *Id*. at 307. She also informed them that she had not taken her "heart" medicine for three days. *Id*. The prisoner continued to complain of chest pain, indicated that she needed to go to the hospital, and sought help. *Id*. In the remaining cases cited by Plaintiff, the prisoners repeatedly suffered and complained of pain and/or prison officials were made aware of but ignored medical treatment needed by the prisoners. *See, e.g., McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999) (indicating that the prisoner had complained of severe

9

stomach pains for several months); *Young v. City of Augusta*, 59 F.3d 1160 (11th Cir. 1995) (describing the prisoner's repeated episodes of psychotic behavior while incarcerated); *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994) (describing the prisoner's repeated complaints of hip pain following hip replacement surgery and the defendants' awareness that the pins in the prisoner's hip had broken); *Durmer v. O'Carroll*, 991 F.2d 34 (3d Cir. 1993) (ignoring physicians' recommendations that the prisoner undergo physical therapy, his repeated requests for physical therapy, and deteriorating physical condition without physical therapy).

At the motion hearing, Plaintiff's counsel indicated that the basis for Plaintiff's claim against Nurse Hawkins and Nurse Vettraino is "their" delay in calling EMS. There is no evidence suggesting that these individuals– who were providing CPR and other life-saving measures to Mr. Pfister– were responsible for or had the opportunity to call for an ambulance or EMS. Furthermore, there is no evidence suggesting that the "ten minute delay" asserted by Plaintiff would have saved Mr. Pfister.

In sum, the record is devoid of evidence alerting Nurse Hawkins or Nurse Vettraino to Mr. Pfister's heart condition or impending heart attack or suggesting that they were deliberately indifferent to his medical needs by failing to call for an ambulance or EMS more quickly. As a result, there is no genuine issue of material fact with respect to the second prong of Plaintiff's deliberate indifference claim. Summary judgment therefore is appropriate with respect to Count I of Plaintiff's Complaint against these defendants.

10

Turning to Plaintiff's remaining claim against CMS, the Supreme Court has held that under certain circumstances, an independent claim against a municipality under § 1983 may survive despite the exoneration of its employees. *See City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989). In *Harris*, the Court held that inadequate police training may serve as the basis for liability under § 1983 but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S. Ct. at 1204. This is consistent with the Court's earlier pronouncement in *Monell v. New York City Department of Social Services* that municipal liability may only attach "when execution of a government's policy or custom . . . inflicts the [constitutional violation]." 436 U.S. 658, 694, 98 S. Ct. 2018, 2038 (1978); *see also Polk County v. Dodson*, 454 U.S. 312, 326, 102 S. Ct. 445, 454 (1981) ("official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983.")

Therefore, to prevail on a § 1983 claim against a municipality, a plaintiff must demonstrate (1) a constitutional violation and (2) a policy or custom of the municipality that was "the moving force of the violation." For the reasons discussed above, there is no evidence demonstrating deliberate indifference to Mr. Pfister's medical needs in violation of his Eighth Amendment rights. But even if Plaintiff could demonstrate such a violation, it fails to identify a CMS policy or custom that was the "moving force" behind the violation. For these reasons, CMS is entitled to summary judgment with respect to Count II of Plaintiff's Complaint.

11

**IV.     Conclusion**

For the above reasons, the Court finds no genuine issue of material fact and that

the CMS Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED**, that the motion for summary judgment by Defendants

Correctional Medical Services, Inc., Angela Vettraino, R.N., and Kathy Hawkins, L.P.N.

is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Daniel G. Romano, Esq.
Brian Richtarcik, Esq.
Jami E. Leach, Esq.